**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

WILLIAM LOOMIS,

                          Plaintiff,                          6:19-cv-1131 (BKS/ATB)

v.

ACE AMERICAN INSURANCE COMPANY,

                          Defendant.

---

**Appearances:**

*For Plaintiff:*
Martha L. Berry
Michael J. Longstreet
Longstreet & Berry, LLP
P.O. Box 249
Fayetteville, NY 13066

*For Defendant:*
Kacey Houston Walker
Kurt M. Mullen
Nixon Peabody LLP
Exchange Place
53 State Street
Boston, MA 02109

**Hon. Brenda K. Sannes, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.      INTRODUCTION

In this action, Plaintiff William Loomis challenges Defendant ACE American Insurance

Company's rejection of his claim for underinsured motorists benefits in connection with an

accident that occurred while Plaintiff was driving a vehicle Defendant insured. (Dkt. No. 2).

Following the parties' cross-motions for summary judgment (Dkt. Nos. 20, 23), the Court

concluded, as a matter of law, that Defendant's failure to obtain explicit written rejection of

uninsured and underinsured motorist coverage ("UM" and "UIM") before excluding it from the $7 million policy it issued to the vehicle owner—Plaintiff's employer, XPO Logistics—violated Indiana's Uninsured Motorist Coverage and Underinsured Motorist Statute, ("UM/UIM Statute"), Indiana Code § 27-7-5-2(a) ("IC 27-7-5-2(a)"). *Loomis v. Ace Am. Ins. Co.*, 517 F. Supp. 3d 95 (N.D.N.Y. 2021).[1] The Court further concluded that in the absence of a written rejection of coverage, "the requirements of the UM/UIM Statute must be 'considered a part of [Defendant's] policy the same as if written therein.'" *Loomis*, 517 F. Supp. 3d at 114 (N.D.N.Y. 2021) (quoting *United Nat. Ins. Co. v. DePrizio*, 705 N.E.2d 455, 460 (Ind. 1999)). According to the policy, Plaintiff's employer "must pay" a $3 million "Retained Limit"—"before the Limits of Insurance become applicable." (Dkt. No. 20-15, at 28–29, 51). As neither party briefed the impact of this provision, the Court noted the issue but did not address it. *Loomis*, 517 F. Supp. 3d at 114 n.16. Following the Court's ruling, the parties submitted a series of letter briefs reflecting different positions regarding the impact of the $3 million "Retained Limit" on this case. (Dkt. Nos. 32, 33). Identifying the "remaining issue" as "an issue of law" and observing that "Plaintiff has not identified any discovery that would be relevant to that issue," the Court construed "Defendant's letter brief as a supplemental motion for summary judgment" and allowed additional briefing. (Dkt. No. 34). For the reasons that follow, the Court grants Defendant's supplemental motion for summary judgment.

---

[1] The Court, however, found no violation under New York law. *Loomis*, 517 F. Supp. 3d at 119.

II.     FACTS[2]

A.     Factual Background

Plaintiff, a New York resident, was injured in a motor vehicle accident while driving a truck owned by his employer, XPO Logistics ("XPO") in New York. (Dkt. No. 20-23, ¶¶ 1-2, 6; Dkt. No. 23-7, ¶¶ 1-2, 6; Dkt. No. 20-19, ¶¶ 2-3). The accident occurred when another vehicle crossed over the center lane and crashed into Plaintiff's truck head-on: both vehicles were traveling at approximately 50 miles per hour. (Dkt. No. 20-23, ¶ 2; Dkt. No. 23-7, ¶ 2; Dkt. No. 20-19, ¶ 4). Plaintiff suffered multiple injuries; the driver of the other vehicle died at the scene. (Dkt. No. 20-23, ¶ 3; Dkt. No. 23-7, ¶ 3; Dkt. No. 20-19, ¶¶ 6–7). At the time of the accident, the truck that Plaintiff was driving was registered in Indiana and garaged in New York. (Dkt. No. 20-23, ¶ 5; Dkt. No. 23-7, ¶ 5).

The other vehicle involved in Plaintiff's accident was insured by State Farm Mutual Automobile Insurance Company ("State Farm"). (Dkt. No. 20-23, ¶ 4; Dkt. No. 23-7, ¶ 4). Plaintiff made a claim against the other driver's estate for the injuries he suffered as a result of the accident. (Dkt. No. 20-23, ¶ 7; Dkt. No. 23-7, ¶ 7). Plaintiff's claim was settled for $50,000—the full amount of the State Farm policy limit—and State Farm paid that amount to Plaintiff. (Dkt. No. 20-23, ¶ 8; Dkt. No. 23-7, ¶ 8; Dkt. No. 20-7; Dkt. No. 20-8). There is no dispute that Plaintiff's damages exceed $50,000. Plaintiff notified Defendant, the insurer of the XPO-owned vehicle he was driving, of his intent to pursue a claim for supplemental underinsured motorist coverage; Defendant denied coverage on the grounds that "there is no

---

[2] The following facts are drawn from the parties' statements of undisputed material facts and responses pursuant to Local Rule 7.1(a)(3), (Dkt. Nos. 20-23, 23-7, 26, 29), to the extent those facts are well-supported by pinpoint citations to the record, as well as the exhibits attached thereto and cited therein to the extent they are admissible as evidence.

Uninsured/Underinsured Motorist Coverage in New York State"[3] under the relevant policies. (Dkt. No. 20-23, ¶ 19; Dkt. No. 23-7, ¶ 19; Dkt. No. 20-4; Dkt. No. 20-6).

### B.      The XSA Policy

At the time of the accident, the vehicle Plaintiff was driving was insured by a policy Defendant issued to XPO, with the policy number XSA H25097257 (the "XSA Policy"). (Dkt. No. 20-23, ¶¶ 10–11; Dkt. No. 23-7, ¶¶ 10–11; Dkt. No. 20-15).[4] The Declarations page of the XSA Policy states that it provides liability coverage for "covered autos," and that the "Limit," that is, "[t]he most [it] will pay for any one Accident or Loss," is $7 million and that the "Retained Limit," that is, "the amount [XPO] must pay before the Limits of Insurance become applicable," "for any one 'accident' or 'loss'" is $3 million. (Dkt. No. 20-15, at 29, 51).

The section of the XSA Policy titled "Liability Coverage" provides that Defendant "will pay the 'insured' for the 'ultimate net loss' in excess of the 'retained limit' because of 'bodily injury' or 'property damage' to which [the XSA Policy] applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.'" (*Id.* at 39). The XSA Policy defines "ultimate net loss" as "the total amount the 'insured' is legally obligated to pay as damages for a covered claim or 'suit' either by adjudication or a settlement to which we agree in writing, and includes deductions for recoveries and salvages which have or will be paid." (*Id.* at 51). "Retained limit" is defined as:

> [T]he limit shown in the Declarations and is the amount you must pay before the Limits of Insurance become applicable. In the event there is other insurance, whether or not applicable to an "accident", claim or "suit" within the "retained limit," you will continue to be responsible for the full amount of the "retained limit" before the

---

[3] The denial letter did not reference Indiana.

[4] XPO also purchased another insurance policy from Defendant with the policy number MMT H2509721A (the "MMT Policy"), which, during the same policy period covered by the XSA Policy, provided coverage for vehicles not covered by the XSA Policy, *i.e.* those "involved in intrastate operations . . . in the states of GA, KS, KY, MS and TX." (Dkt. No. 20-14, at 10, 60). There is no argument that this policy is relevant to the present issue.

> Limits of Insurance under this policy apply. In no case will we be required to pay the "retained limit" or any portion thereof.

(*Id.* at 51).

The XSA Policy's "Limit of Insurance" provision states:

> Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for "ultimate net loss" in excess of the "retained limit" for damages . . . resulting from any one "accident" is the Limit of Insurance for Liability Coverage shown in the Declarations.
>
> . . . .
>
> You agree to assume payment of the "retained limit" before the Limits of Insurance become applicable.[5]

(*Id.* at 44).

## III.   STANDARD OF REVIEW

Under Rule 56(a), summary judgment may be granted only if all the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*). The movant may meet this burden by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the

---

[5] Under "General Conditions," the XSA Policy states: "Bankruptcy or insolvency of the 'insured' or the estate will not relieve us of any obligations under this policy." (Dkt. No. 20-15, at 46).

existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322; *see also Selevan v. N.Y. Thruway Auth.*, 711 F.3d 253, 256 (2d Cir. 2013) (explaining that summary judgment is appropriate where the nonmoving party fails to "'come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor' an essential element of a claim" (quoting *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 509 (2d Cir. 2010))).

If the moving party meets this burden, the nonmoving party must "set out specific facts showing a genuine issue for trial." *Anderson*, 477 U.S. at 248, 250; *see also Celotex*, 477 U.S. at 323-24; *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003). Still, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986) (quoting *Quarles v. Gen. Motors Corp.*, 758 F.2d 839, 840 (2d Cir. 1985)). Furthermore, "[m]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995)).

## IV.   DISCUSSION

For purposes of the supplemental summary judgment motion, the parties do not dispute that the XSA Policy covered the vehicle Plaintiff was driving at the time of his accident; that Plaintiff was using XPO's covered "auto" with XPO's permission at the time of the accident, and

therefore also qualifies as an "insured" under the XSA Policy; and that Plaintiff satisfied all the necessary prerequisites to bringing suit against Defendant for UM/UIM coverage. (Dkt. No. 20-23, ¶ 18; Dkt. No. 23-7, ¶ 18; Dkt. No. 23-1, at 8). The parties' core dispute is whether, under Indiana law, when UIM coverage is read into the XSA Policy, the $3 million Retained Limit must be paid before the $7 million Limits of Insurance become available to Plaintiff. (Dkt. Nos. 32, 33, 35, 36). Having determined that UM and UIM coverage must be read into the XSA Policy under Indiana law, and there being no argument that New York law applies to the present inquiry, the Court considers the parties' arguments solely under Indiana law.

As the parties acknowledge, the Supreme Court of Indiana has not addressed whether the UM/UIM Statute allows the enforcement of a retained limit in a UM/UIM policy. "[I]n the absence of authoritative law from the state's highest court," the Court "must either (1) predict how the [Indiana Supreme Court] would resolve the state law question, or, if state law is so uncertain that" the Court cannot make a "reasonable prediction, (2) certify the question to the [Indiana Supreme Court] for a definitive resolution." *DiBella v. Hopkins*, 403 F.3d 102, 111 (2d Cir. 2005); *see also* Ind. R. App. P. 64 ("[A]ny federal district court may certify a question of Indiana law to the Supreme Court [of Indiana] when it appears to the federal court that a proceeding presents an issue of state law that is determinative of the case and on which there is no clear controlling Indiana precedent."). Although Defendant requests certification in the event finds an ambiguity in the relevant provisions of the UM/UIM Statute, because the Court finds none and given that the certification procedure should only be used in "exceptional circumstances," the Court will "undertake the imprecise but necessary task of predicting on a reasonable basis how the [Indiana Supreme Court] would rule if squarely confronted with this issue." *DiBella*, 403 F.3d at 111–12.

A.      **Indiana's UM/UIM Statute**

Plaintiff primarily relies on IC 27-7-5-2, the provision in the UM/UIM Statute governing

UM/UIM coverage for bodily injury. The version of IC 27-7-5-2 in effect in October 2017,[6]

provides, in relevant part:

> Sec. 2. (a) Except as provided in subsections (d), (f), and (h), the insurer shall make
> available, in each **automobile liability or motor vehicle liability policy of insurance**
> which is delivered or issued for delivery in this state with respect to any motor vehicle
> registered or principally garaged in this state, insuring against loss resulting from liability
> imposed by law for bodily injury or death suffered by any person and for injury to or
> destruction of property to others arising from the ownership, maintenance, or use of a
> motor vehicle, or in a supplement to such a policy, the following types of coverage:
>
>> (1) . . . for the protection of persons insured under the policy who are legally
>> entitled to recover damages from owners or operators of uninsured or
>> underinsured motor vehicles because of bodily injury . . .[or] injury to or
>> destruction of property . . . ; or
>>
>> (2) . . . for the protection of persons insured under the policy provisions who are
>> legally entitled to recover damages from owners or operators of uninsured or
>> underinsured motor vehicles because of bodily injury . . . .
>
> The uninsured and underinsured motorist coverage **must be provided by insurers** for
> either a single premium or for separate premiums, **in limits at least equal to the limits of
> liability specified in the bodily injury liability provisions of an insured's policy,
> unless such coverages have been rejected in writing by the insured**.

IC 27-7-5-2(a) (2013) (emphasis added). To summarize, the UM/UIM Statute provides that

every "automobile liability or motor vehicle liability policy of insurance" that covers a vehicle

"registered or principally garaged" in Indiana *must* include UM and UIM coverage "in limits at

least equal to" the policy's "bodily injury" liability limits, unless the insurer obtains the insured's

affirmative rejection of such coverage in writing. (*Id.*).

---

[6] IC 27-7-5-2 has been amended since October 2017, when the XSA Policy was issued and Plaintiff's accident
occurred. *See* 2018 Ind. Legis. Serv. P.L. 208-2018, § 9; 2020 Ind. Legis. Serv. P.L. 130-2020, § 13. Both parties rely
on, and the Court applies, the version of the statute that was in effect in October 2017.

Plaintiff also cites to a "Limitation on coverages" provision, IC 27-5-5-5,[7] and provision limiting the deductible that may be charged for UM property damage coverage, IC 27-7-5-3, which are further discussed below. *See infra* Section IV.C.2.b. and note 11.

### B.    Reading the UM/UIM Statute into the XSA Policy

The Court begins by incorporating the coverage mandated by the UM/UIM Statute into the terms of the XSA Policy. Thus, the Court reads the XSA Policy to provide UM and UIM "coverage . . . in limits at least equal to the limits of liability specified in the bodily injury liability provisions of [the] policy." IC 27-7-5-2(a). The "Limit" shown in the Declarations, that is, the most Defendant "will pay for any one Accident or Loss," including bodily injury, is $7 million. (Dkt. No. 20-15, at 29). The XSA Policy states that it "will pay the 'insured' for the 'ultimate net loss' in excess of the 'retained limit' because of 'bodily injury.'" (*Id.* at 39). And the "Retained Limit" shown in the Declarations is $3 million "for any one 'accident' or 'loss.'" (*Id.* at 29). Accordingly, the Court reads the XSA Policy as providing for a $7 million limit of liability for UM/UIM damages, in excess of the $3 million retained limit. *See, e.g.*, *Stonington Ins. Co. v. Williams*, 922 N.E.2d 660, 670–71 (Ind. Ct. App. 2010) (reading UM coverage into policy where insured had not rejected limits in writing and finding insured was "entitled to UM

---

[7] "Limitations on coverage," provides, in relevant part:

> (c) The maximum amount payable for bodily injury under uninsured or underinsured motorist coverage is the lesser of:
>
>> (1) the difference between:
>>> (A) the amount paid in damages to the insured by or for any person or organization who may be liable for the insured's bodily injury; and
>>> (B) the per person limit of uninsured or underinsured motorist coverage provided in the insured's policy; or
>> (2) the difference between:
>>> (A) the total amount of damages incurred by the insured; and
>>> (B) the amount paid by or for any person or organization liable for the insured's bodily injury.

IC 27-7-5-5(c).

coverage of up to $1,000,000 under the Policy," explaining that "[t]he Policy has a liability limit of $1,000,000, and the UM Statute requires that the Policy's UM limits be the same").

### C.    Analysis

Plaintiff argues that because the UM/UIM Statute does "not provide for an offset for a deductible or self insured retention for bodily injury claims," (Dkt. No. 32, at 2), the retained limit in the XSA Policy is an impermissible "coverage limitation," that "does not limit Defendant's obligation to pay," and "[b]y operation of law, $7 million is the 'limit of liability,'" (Dkt. No. 35, at 1, 5–6).[8] Plaintiff further argues that because his employer has no obligation to pay the retained limit, coverage under the XSA Policy is illusory because it can never be triggered. (*Id.* at 4). Defendant argues that it has "no obligation to pay Plaintiff for ultimate net loss within the $3 million Retained Limit" because the XSA Policy unambiguously states that the insured must pay the $3 million retained limit "before the Limits of Insurance become applicable." (Dkt. No. 33, at 1). In other words, Defendant argues, it is not required to "provide[] first dollar coverage." (*Id.*).

### 1.    Operation of Retained Limit

There is no real dispute that the plain language of the XSA Policy requires payment of the $3 million retained limit before the $7 million "Limits of Insurance become applicable" or that payment for "ultimate net loss" is "in excess of the 'retained limit.'" (Dkt. No. 20-15, at 44). *See Citimortgage, Inc. v. Barabas*, 975 N.E.2d 805, 813 (Ind. 2012) (instructing that courts must "begin with the plain language of the contract, reading it in context and, whenever possible, construing it so as to render each word, phrase, and term meaningful, unambiguous, and harmonious with the whole"); *see also Catanzarite v. Safeco Ins. Co. of Indiana*, 144 N.E.3d

---

[8] As explained below, a retained limit is not, as this argument assumes, an "offset" or a "set-off" or a deductible.

778, 783 (Ind. Ct. App. 2020) ("Insurance contract provisions are subject to the same rules of construction as other contracts."). Plaintiff's argument instead focuses on whether the retained-limit provision violates the UM/UIM Statute.

Before considering whether the retained limit violates the UM/UIM statute, it is helpful to review the operation of retained limits or self-insured retentions ("SIR") within insurance policies, which is well settled under Indiana law. The Indiana Supreme Court has recognized that only after the retained limit or SIR is exhausted or satisfied are the insurer's policy obligations triggered. *Cinergy Corp. v. Associated Elec. & Gas Ins. Servs., Ltd.*, 865 N.E.2d 571, 576–77 (Ind. 2007); *Walsh Constr. Co., v. Zurich Am. Ins. Co.*, 72 N.E.3d 957, 963 (Ind. Ct. App. 2017) ("Both the Indiana Supreme Court and this court have repeatedly recognized that, as between an insurer and a single insured, the insurer's responsibilities arise only '[a]fter the self-insured retention amounts specified in the policies are satisfied.'" (quoting *Cinergy*, 865 N.E.2d at 576–77)); *Thomson Inc. v. Ins. Co. of N. Am.*, 11 N.E.3d 982, 1011 (Ind. Ct. App. 2014) ("Thomson must prove that the $250,000 SIR for each 'occurrence' has been satisfied under the [policies] before any obligations under those Policies commence."); *Allianz Ins. Co. v. Guidant Corp.*, 884 N.E.2d 405, 420 (Ind. Ct. App. 2008) (explaining that "it is only *after* the SIR is exhausted that an insurer's duty to defend, among other things, is triggered" (citing *Cinergy*, 865 N.E.2d at 576–77)) (emphasis in original).

Moreover, Indiana law expressly distinguishes a retained limit or SIR from a deductible and holds that a retained limit or SIR does not reduce a policy's limit of liability: "while a deductible is subtracted from a policy's limits, thereby reducing an insurer's total obligation to the insured, the full limits of a policy including a retained amount are available to the insured once [the retained] amount has been satisfied." *Monroe Guar. Ins. Co. v. Langreck*, 816 N.E.2d

485, 495 (Ind. Ct. App. 2004) (emphasis added) (citing Douglas R. Richmond, Issues and Problems in "Other Insurance," Multiple Insurance and Self–Insurance, 22 Pepp. L. Rev. 1373, 1449 (1995)).[9] In *Monroe*, applying this principle to the policy at issue, which specified a $1 million "retained amount" and a "maximum coverage limit of $25 million," the court explained: "The retained amount . . . is not a deductible, in that it does not reduce [the insured's] $25 million total coverage obligation to [the insured]; the total amount [the insured] may actually recover pursuant to the . . . policy for claims expenses and damages combined is $25 million, not $24 million." *Id.* at 489, 495. Thus, once the $3 million retained limit is satisfied, the total amount Plaintiff may recover pursuant to the XSA Policy is $7 million, not $4 million. Accordingly, the Court turns to the question of whether a retained limit is valid and enforceable under the UM/UIM Statute.

## 2.      Enforceability of Retained Limit Under UM/UIM Statute

### a.      IC 27-7-5-2

The UM/UIM Statute requires Defendant to provide UM/UIM coverage in limits "at least equal to the limits of liability specified in the bodily injury liability provisions of an insured's policy." IC 27-7-5-2(a). Plaintiff argues that this language is ambiguous because the parties interpret it differently: Plaintiff interprets it to implicate the "'Limit' found in [the XSA Policy] declaration page, $7 million"; and Defendant interprets it to implicate the "Limits of Insurance" provision in the XSA Policy, which requires exhaustion of the $3 million retained limit before the $7 million limit is triggered. (Dkt. No. 35, at 4). More specifically, Plaintiff posits a

---

[9] In *Allianz*, the court stated while an "SIR is similar to a deductible," there were distinctions: "[a] policy with a deductible obliges the insurer to respond to a claim from 'dollar one' (i.e., immediately upon tender), subject to the insurer's right to later recoup the amount of the deductible from the insured. A policy subject to a SIR, in contrast, obliges the policyholder itself to absorb expenses up to the amount of the SIR, at which point the insurer's obligation is triggered." As stated, courts in Indiana distinguish between deductibles and retained amounts. *Monroe*, 816 N.E.2d at 495–96.

distinction between the concepts of "coverage" and "limits of liability," and argues that the UM/UIM Statute explicitly makes UM/UIM coverage mandatory with no exceptions or offsets for plans that include retained limits. (*Id.*). Given that ambiguity, Plaintiff argues that it is reasonable to read the UM/UIM Statute as making UM/UIM coverage mandatory from the first dollar (absent an applicable exemption or written rejection), with the aforementioned language simply setting the minimum amount at which that coverage must be provided. (*Id.* at 4–5).

"Indiana courts employ the basic tools of statutory interpretation: Statutes are read as a whole, and words are given their plain and ordinary meaning." *Frye v. Auto-Owners Ins. Co.*, 845 F.3d 782, 786 (7th Cir. 2017) (citations omitted). "If a statute is unambiguous, that is, susceptible to but one meaning, [the Court] must give the statute its clear and plain meaning." *Bolin v. Wingert,* 764 N.E.2d 201, 204 (Ind. 2002) (citations omitted). "If a statute is susceptible to multiple interpretations, however, [the Court] must try to ascertain the legislature's intent and interpret the statute so as to effectuate that intent." *Id.* The Court "presume[s] the legislature intended logical application of the language used in the statute, so as to avoid unjust or absurd results." *Id.* Moreover, because the Indiana UM/UIM Statute "is remedial in nature," courts "must liberally construe the statute in favor of the insured." *State Farm Fire & Cas. Co. v. Garrett*, 783 N.E.2d 329, 333 (Ind. Ct. App. 2003) (citing *West Bend Mut. v. Keaton*, 755 N.E.2d 652, 655 (Ind. Ct. App. 2001)). "Indeed, the main purpose behind the uninsured motorist statute is to place an injured insured 'in substantially the same position he would have occupied had the offending party complied with the' UM/UIM Statute." *Id.* (quoting *West Bend*, 755 N.E.2d at 655).

The UM/UIM Statute is clear and unambiguous in its directive that insurers must provide UM/UIM "coverage . . . in limits at least equal to the limits of liability specified in the bodily

injury liability provisions of an insured's policy." IC 27-7-5-2(a). Once UM/UIM coverage is read into the XSA Policy, it provides UM/UIM coverage in limits equal to the bodily injury liability provisions of the policy—$7 million. While satisfaction of the retained limit is a trigger to Defendant's obligations, the retained limit does not diminish the $7 million liability limit or the coverage the XSA Policy says it will provide once the retained limit is satisfied.

Plaintiff is correct that that the UM/UIM Statute does not expressly refer to policies with retained limits, but even viewing the UM/UIM Statute as a whole, the Court finds nothing that suggests the retained limit does not comport with the statute. Plaintiff argues that the retained limit is unenforceable and "does not limit Defendant's obligation to pay" because none of the few exemptions to the UM/UIM Statute allow a "'carve out' for self insured retentions." (Dkt. No. 35, at 5). Indeed, the Indiana Supreme Court has stated in no uncertain terms that "[a]bsent an express directive from our legislature," courts must not "carve out an exemption for *particular policies*." *DePrizio*, 705 N.E.2d at 457–63 (emphasis added); *see also Frye*, 845 F.3d at 787 ("[T]he Indiana Supreme Court made clear that if the state legislature wished to exclude any specific types of insurance contracts from the UIM-coverage mandate, only an explicit statutory carve-out would suffice." (citing *DePrizio*, 705 N.E.2d at 463–64)). Here, the Court has found the XSA Policy is *not exempt* from providing UM/UIM coverage and that in the absence of a rejection of UM/UIM coverage in writing, the XSA Policy must be read to provide UM/UIM coverage. *Loomis*, 517 F. Supp. 3d at 114. Thus, it appears that what Plaintiff in fact opposes is the policy language, which specifies that the retained limit is a condition that must be satisfied before Defendant's obligations under the XSA Policy are triggered.

The Indiana Supreme Court has explained that "[s]o long as the policy language comports with our state statutes, it will control," but if it is inconsistent with those statutes, it is

unenforceable. *Just. v. Am. Fam. Mut. Ins. Co.*, 4 N.E.3d 1171, 1177 (Ind. 2014) (internal

citation omitted) (first quoting *Medley v. Am. Econ. Ins. Co.*, 654 N.E.2d 313, 315 (Ind. Ct. App.

1995); and then citing *Bush v. State Farm Mut. Auto. Ins. Co.*, 905 N.E.2d 1003, 1005 (Ind.

2009)). In addition, Indiana courts uniformly hold that "[a]ttempts to limit or diminish the

uninsured motorists protection required by statute [are] against . . . public policy" of this state.

*Smith v. Allstate Ins. Co.*, 681 N.E.2d 220, 222 (Ind. Ct. App. 1997) (citing *American States Ins.*

*Co. v. Braden*, 625 N.E.2d 1252, 1257 (Ind. Ct. App.1993)). Here, once the UM/UIM Statute is

read into the XSA Policy, the XSA Policy provides coverage in the amount of $7 million, which

is equal to the limit of liability specified in the bodily injury liability provisions of the policy, and

thus comports with the UM/UIM Statute. As discussed above, the $3 million retained limit in no

way diminishes the $7 million limit of liability; it is a condition precedent to coverage.[10]

In addition, even in the context of the UM/UIM Statute, "[i]t is well established that an

insurer is free to limit its liability in a manner not inconsistent with public policy." *Jones v. State*

*Farm Mut. Auto. Ins. Co.*, 635 N.E.2d 200, 203 (Ind. Ct. App. 1994) (citing *Allstate Ins. Co. v.*

*Boles*, 481 N.E.2d 1096, 1098 (Ind. 1985); *see also id.* (finding that the limitation on

underinsured motorist coverage, which contained a household exclusion was "neither illusory

---

[10] Plaintiff cites *Frye*, 845 F.3d 782, in support of his argument that the retained limit is an impermissible "carve-out" because it is not specifically identified in the UM/UIM Statute. (Dkt. No. 35, at 6). Plaintiff argues (incorrectly) that the only reason *Frye* allowed a workers' compensation setoff was because the statute expressly allowed such setoffs. (Dkt. No. 35, at 6). In fact, the Seventh Circuit prohibited the workers' compensation setoff on the grounds that it was contrary to the contract language; the court did not consider whether it was a proper setoff under the UM/UIM Statute. *Frye*, 845 F.3d at 788–89. Nor is *Frye* otherwise applicable here. The insurer in *Frye* argued that because subsection (d) of the UM/UIM Statute, IC 27-7-5-2(d), created a carve-out, or exemption, for commercial umbrella policies, the insurer could have "abstain[ed] from providing UIM coverage in the first place," but since it did "provide such coverage, [it could] provide it in any form" it chose. *Id.* at 786. The Seventh Circuit rejected this argument finding that the statutory exemption was limited in scope: it only exempted commercial umbrella insurers from providing UM/UIM coverage; the statute did not exempt commercial umbrella insurers who elected to provide coverage from complying with the statutory requirement to provide that coverage in limits equal to the limits of liability for bodily injury. *Id.* at 787 (quoting IC 27-7-5-2(a)). Here, there is no question of different or unequal limits for UM/UIM coverage and bodily injury coverage under the XSA Policy: they both have a $7 million liability limit subject to a $3 million retained limit. Thus, *Frye's* consideration of the scope of the commercial umbrella exemption does not aid Plaintiff's argument.

nor contrary to public policy"). "[P]ublic policy is not violated unless 'the policy specifically limits uninsured motorist coverage as to persons who would otherwise qualify as insureds for liability purposes.'" *Smith v. Allstate Ins. Co.*, 681 N.E.2d 220, 222 (Ind. Ct. App. 1997) (quoting *Whitledge*, 586 N.E.2d at 887). "Restated, if a person qualifies as an insured under the liability section of the policy, he must also qualify under the uninsured motorists section or the insurance contract violates public policy." *Id.* (citing *Connell v. American Underwriters, Inc.*, 453 N.E.2d 1028, 1031 (Ind. Ct. App. 1983)). Here, it is undisputed that Plaintiff qualifies as an insured under the UIM provision read into the XSA Policy. Thus, the Court finds no public policy violation.

Courts have also allowed conditions precedent to the attachment of coverage in the UM/UIM context. *See Adkins v. Vigilant Ins. Co.*, 927 N.E.2d 385, 392–93 (Ind. Ct. App. 2010) (finding that "the conditions necessary to attach" the plaintiff's "excess liability coverage" had not been met, explaining that "[t]he Excess Umbrella Policy clearly states that it merely provided Sutphin with excess liability coverage for damages for which Sutphin was legally responsible and that coverage would only be initiated after the maximum limits of Sutphin's underlying liability insurance policies had been exhausted" and that the plaintiff had not "proven that Sutphin was legally responsible for any of the alleged damages, and it is undisputed that neither of Sutphin's underlying insurance policies covered any of the alleged damages" (citing *Cincinnati Ins. Co. v. Amerisure Ins. Co.*, 644 N.E.2d 136, 140 (Ind. Ct. App. 1994)). The Court therefore finds that the retained limit appears to be a permissible condition precedent, or trigger to coverage.

### b.   IC 27-7-5-5

Plaintiff relies on IC 27-7-5-5, which governs "Limitations on coverage" in support of his argument that the retained limit is not among the statutorily-identified limitations and therefore

16

violates the UM/UIM Statute. (Dkt. No. 32). Plaintiff argues that IC 27-7-5-5 does "not provide for an offset for a deductible or self insured retention for bodily injury claims." (*Id.* at 2).[11] This provision, which is also referred to as an "anti-stacking provision," *Wagner v. Yates*, 912 N.E.2d 805, 812 (Ind. 2009), however, affords Plaintiff no relief as it appears to be inapplicable to his argument.

The Supreme Court of Indiana has explained that "anti-stacking clauses 'limit coverage when coverage under another policy is currently available so as to preclude stacking or double recovery of uninsured motorist coverages.'" *Id.* (quoting *Progressive Ins. Co., Inc. v. Bullock*, 841 N.E.2d 238, 240 (Ind. Ct. App. 2006)). This provision establishes "the maximum and minimum parameters for the amount of recovery a plaintiff is entitled to as a result of a UM or UIM claim." *Kinslow v. GEICO Ins. Co.*, 858 N.E.2d 109, 114 (Ind. Ct. App. 2006) (citing *Gardner v. State Farm Mut. Ins. Co.*, 589 N.E.2d 278, 281 (Ind. Ct. App. 1992)). In general, a "setoff" is an amount paid by a tortfeasor or other insurer in connection with a claim that may be "setoff" or reduced from the amount an insured is entitled to recover under a later-applied policy. *See, e.g., Kinslow*, 858 N.E.2d at 111 (noting that "[s]etoff provisions in UM[/UIM] motorist policies have generated frequent litigation, often focusing on whether payment to an insured from a third party should be deducted from the total amount of damages sustained by the insured or from the limits of liability of the UM/UIM coverage"). Moreover, courts have recognized that "[t]he language of Indiana Code Section 27–7–5–5(c) does not provide a set formula for calculating setoffs in all cases," *Kinslow*, 858 N.E.2d at 114 (citing *Gardner*, 589 N.E.2d at 281); *see Gardner*, 589 N.E.2d at 281 ("This language is indicative not of the legislature's intent to

---

[11] Plaintiff also cited to IC 27-7-5-3, which limits a deductible for UM property damage caused by collision to not more than $300. As stated, an SIR or retained limit is not a deductible under Indiana law.

provide a set formula, but to provide maximum and minimum parameters for the amount of damages a plaintiff is entitled to as a result of an uninsured motorist claim."), and that it must be read in conjunction with the UM/UIM policy's language, *Gardner*, 589 N.E.2d at 281 (explaining that so long as the policy's language and relevant provisions provide coverage "within these statutory parameters, the policy does not violate" the UM/UIM Statute). Plaintiff does not identify any language in this provision that would allow a conclusion that retained limits are impermissible in the context of calculating payment under the XSA Policy. Indeed, without evidence of "the amount paid in damages" to Plaintiff or "the total amount of damages" he incurred, IC 27-7-5-5(c)(1)(A), (2)(A), any analysis under this provision would be impossible and premature. Accordingly, the Court concludes that IC 27-7-5-5(c) does not provide a basis for concluding that a retained limit is prohibited by or incompatible with the UM/UIM Statute.

### 3.    Illusory Coverage

Plaintiff argues that because "[t]here is no statutory authority or contractual basis to impose underinsured motorist coverage obligations" on his employer,[12] (Dkt. No. 32, at 2), his employer "would never make payment of the 'retained limit' as required by Defendant's policy," and the coverage in the XSA Policy would never be triggered, (Dkt. No. 35, at 5). Plaintiff has not provided any indication of his total damages. The Court therefore has no basis on which to evaluate whether his damages would exceed the $3 million retained limit.

Nevertheless, even if the Court were to find, as Plaintiff argues, that UM/UIM coverage in the XSA Policy is essentially illusory because his employer is a self-insurer[13] and has no

---

[12] Plaintiff asserts that "this Court previously held" that his employer "has no obligation to make any payment for UM/UIM coverage to Plaintiff." (Dkt. No. 35, at 5). Plaintiff's employer is not a party to this action and this Court makes no determination regarding Plaintiff's employer's legal obligations.

[13] Plaintiff refers to his employer as a "self insurer" throughout his opening brief on summary judgment. (*See generally* Dkt. No. 20-22). In *City of Gary v. Allstate Insurance Co.*, 612 N.E.2d 115 (Ind. 1993), the Indiana Supreme Court held that a self-insured city was not required to provide uninsured motorist coverage to a police officer injured on duty in a city-owned police car, explaining that because "[s]elf-insurance . . . is not insurance," the

obligation to pay the $3 million retained limit necessary to trigger that coverage, the remedy would not provide Plaintiff the relief he seeks—an order requiring Defendant to pay damages within the retained limit. The Indiana Supreme Court "has defined illusory coverage as that for which the insured paid a premium but from which he would not be paid benefits under any reasonably expected circumstances." *Jones v. State Farm Mut. Auto. Ins. Co.*, 635 N.E.2d 200, 202 (Ind. Ct. App. 1994) (citing *Meridian Mutual Insurance Co. v. Richie*, 540 N.E.2d 27, 30 (Ind. 1989). "Provisions in an insurance policy . . . [that] in effect, provide only illusory coverage, should be enforced to satisfy the reasonable expectations of the insured." *Davidson v. Cincinnati Ins. Co.*, 572 N.E.2d 502, 508 (Ind. Ct. App. 1991). "[T]he 'expectations' of which the Indiana court speaks are the objectively reasonable expectations of an insured," that is "expectations that an insured 'could' have had, not of the expectations it had in fact." *Eli Lilly & Co. v. Home Ins. Co.*, 794 F.2d 710, 715 (D.C. Cir. 1986) (citing *Eli Lilly & Co. v. Home Ins. Co.*, 482 N.E.2d 467, 470 (Ind. 1985)). If the trigger for UM/UIM coverage—or the UM/UIM coverage itself—were illusory, Plaintiff could reasonably expect Defendant to comply with its obligations under the XSA Policy and to pay Plaintiff for UIM damages "in excess" of the $3 million retained limit, up to the amount of its $7 million limit of liability, (Dkt. No. 20-15, at 44 ("[T]he most we will pay for 'ultimate net loss' in excess of the 'retained limit' for damages . . . resulting from any one 'accident' is the Limit of Insurance for Liability Coverage shown in the Declarations.")), even if the retained limit had not been paid.

---

city was not subject to the UM/UIM Statute, which governed insurance policies. *City of Gary*, 612 N.E.2d at 119, superseded by statute on other grounds, *see DePrizio*, 705 N.E.2d 455; *but see Jackson v. Jones*, 804 N.E.2d 155, 158–59 (Ind. Ct. App. 2004) ("Although self-insurers are generally required to provide uninsured motorist coverage pursuant to the Financial Responsibility Act, IC 9–25–2–3,2 and the requirements for uninsured and underinsured motorist coverage, IC 27–7–5–2,3 the City of Indianapolis is statutorily immune under the Tort Claims Act, now IC 34–13–3–3(10),4 from liability for an act or omission of anyone other than a city employee.").

By the same token, nothing in the XSA Policy or the UM/UIM Statute would allow a reasonable expectation that Defendant was obligated to pay UIM damages falling within the amount of the $3 million retained limit," (*see id.* at 51 ("In no case will we be required to pay the 'retained limit' or any portion thereof.")). *See, e.g.*, *In re Fed. Press Co., Inc.*, 104 B.R. 56, 60–61 (Bankr. N.D. Ind. 1989) (applying Indiana law and concluding that "[t]he policies place no obligation upon Columbia to pay damages falling within the amounts of the retained limit which Federal Press has the duty to pay. Moreover, such a result cannot be inferred as a matter of law. The provisions regarding the insured's retained limit do not purport to excuse Columbia from its obligations in the event Federal Press fails to pay the retained limit of $300,000." (citing *Ryder Truck Lines, Inc. v. Carolina Cas. Ins. Co.*, 385 N.E.2d 449, 452 (Ind. 1979)); *see also Ryder Truck Lines*, 385 N.E.2d at 452 ("In the present case, since Carolina's excess coverage began only if the loss was over $100,000 for personal injury liability, then the excess liability focused on the upper limits of the other insurance policy. As stated by the Court of Appeals, *the excess insurance clause should not be extended to cover an amount for which the insured, here Ryder, has bargained to become a self-insurer*.") (emphasis added). Thus, even if the UM/UIM coverage in the XSA Policy were illusory, Plaintiff has identified no legal basis for concluding that the remedy under those circumstances would obligate Defendant to pay UM/UIM damages within the $3 million retained limit; the XSA Policy obligates Defendant to pay UM/UIM damages "*in excess of*" the $3 million retained limit. (Dkt. No. 20-15, at 39). As noted, there is no evidence that Plaintiff's damages exceed the retained limit.

Finally, Plaintiff argues that because his employer "would never make payment of the retained limit" as required by the XSA Policy, a finding that allows Defendant "to water down the UM/UIM mandate with a self insured retention," "would be inconsistent with the remedial

20

purpose of UM/UIM coverage in Indiana policies." (Dkt. No. 35, at 5–6). To the extent there is a $3 million gap in coverage because plaintiff's employer is, as Plaintiff asserts, self-insured, and not legally obligated to provide UM/UIM coverage, the unavailability of coverage at that level would not be unknown to the Indiana legislature:

> Although we recognize the remedial purpose of the uninsured motorist coverage statute and we may even agree that public policy favors a requirement that self-insurers under the financial responsibility law should be required to provide some sort of uninsured motorist protection for those who drive their automobiles, it is not our role to sit as a judicial legislator and write such a requirement into the act. Rather, this type of mandate must come from the legislature.

*City of Gary*, 612 N.E.2d at 119. Accordingly, the Court concludes that the retained limit in the XSA Policy is not prohibited by or incompatible with the Indiana UM/UIM Statute.

## V. CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendant's supplemental motion for summary (Dkt. No. 33) is **GRANTED**; and it is further

**ORDERED** that the parties are to file a joint status report by April 7, 2022 indicating how they seek to proceed.

**IT IS SO ORDERED.**

Dated: <u>March 24, 2022</u>
Syracuse, New York

Brenda K. Sannes
U.S. District Judge